IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM CARR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:01-cv-625-DGW |
| ) | |
| LARRY WHITTENBURG and CRAIG HEIN, ) | |
| ) | |
| Defendants. ) | |

### ORDER

This matter is before the Court on the Motion to Dismiss Plaintiff's Amended Complaint filed by the Defendants, Larry Whittenburg and Craig Hein, on September 2, 2005 (Doc. 84). For the reasons set forth below, the motion is **DENIED**.

### BACKGROUND

Plaintiff William Carr, an inmate at the Menard Correctional Center ("Menard") near Chester, Illinois, brings this action pursuant to 42 U.S.C. § 1983. Carr alleges that, on April 21, 2001, he wrote a grievance against William Spiller, a Menard employee, and mailed it to Defendant Larry Whittenburg, also a Menard employee (see amended complaint ("Am. Compl.") ¶¶ 6-7). In retaliation, Whittenburg wrote a false disciplinary report dated April 27, 2001, claiming that Carr intimidated or threatened his cellmate, Bernard Taylor (see id. ¶ 8). The report was signed by Defendant Craig Hein, another Menard employee, who ordered Carr to be placed in temporary confinement (see id. ¶ 9). Carr suffered a scar on his wrist due to being handcuffed (see id.).

After an adjustment committee hearing regarding the disciplinary report, Carr was ordered to undergo a three-month demotion from A grade status to C grade status, three months in segregation, and denial of contact visits for three months (see Am. Compl. ¶¶ 10-11). During

the three-month period, Carr was unable to attend Muslim religious services, lost unassigned pay in the amount of $10 per month, was denied recreation for the first ten days of the three-month period due to segregation, was ineligible for a medium security transfer, and was unable to attend the general prison population's yard recreation (see id. ¶ 11).  Also, Carr suffered pain and bruising and scarring on his wrists due to being required to wear handcuffs that were too small for his wrists (see id.).

Carr asserts that Whittenburg and Hein violated his rights under the First Amendment and Fourteenth Amendment of the United States Constitution by retaliating against him for filing a grievance (see Am. Compl. ¶ 14).  Whittenburg and Hein are sued in their individual and official capacities (see id. ¶¶ 4 and 5).  Carr seeks nominal, compensatory, and punitive damages, as well as declaratory and injunctive relief (see id. § V).  Whittenburg and Hein have moved to dismiss on four grounds:  Carr's claim for compensatory damages is barred under 42 U.S.C. § 1997e(e) by reason of Carr's failure to allege a serious physical injury due to the conduct complained of; Carr's claim for injunctive relief fails because he alleges no ongoing violation of his rights by the Defendants; Carr is prohibited by the Eleventh Amendment of the United States Constitution from maintaining a suit for money damages against Whittenburg and Hein in their official capacities; and Whittenburg and Hein are shielded from suit by the doctrine of qualified immunity.  The Court will address each of these contentions in turn.

## DISCUSSION

### A. Legal Standard

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the sufficiency of a complaint, not to resolve a case on its merits.  See

Marshall-Mosby v. Corporate Receivables, Inc., 205 F.3d 323, 326-27 (7th Cir. 2000).  When evaluating a Rule 12(b)(6) motion, a court must accept as true all factual allegations in a complaint and draw all reasonable inferences in a Plaintiff's favor.  See Hentosh v. Herman M. Finch Univ. of Health Scis./The Chicago Med. Sch., 167 F.3d 1170, 1173 (7th Cir. 1999).  Because the Federal Rules of Civil Procedure establish a liberal pleading system that requires only notice pleading, a "complaint's mere vagueness or lack of detail is not sufficient to justify a dismissal."  National Serv. Ass'n, Inc. v. Capitol Bankers Life Ins. Co., 832 F. Supp. 227, 230 (N.D. Ill. 1993).  A motion to dismiss should not be granted unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  See also Johnson v. Martin, 943 F.2d 15, 16 (7th Cir. 1991).[1]

    **B.**    **Defendants' Motion to Dismiss**

---

[1]  It should be noted that Carr never filed a response to the instant motion to dismiss.  As such, under Local Rule 7.1(c), the Court is entitled, in its discretion, to deem Carr's failure to respond an admission of the merits of the motion.  However, the United States Court of Appeals for the Seventh Circuit has instructed that dismissal of a case is not an appropriate sanction for a party's failure to comply with a local rule.  See Kovilic Constr. Co. v. Missbrenner, 106 F.3d 768, 772-73 (7th Cir. 1997).  See also Carver v. Bunch, 946 F.2d 451, 453-54 (6th Cir. 1991) (a local rule would not be interpreted as authorizing dismissal of an action due to the Plaintiff's failure to file a memorandum in opposition to the defendant's motion to dismiss).  Also, district courts enjoy "considerable discretion in interpreting and applying their own local rules." Weibrecht v. Southern Ill. Transfer, Inc., 241 F.3d 875, 881 (7th Cir. 2001), and "noncompliance with the local rules may be excused by the court in its discretion."  Slanina v. William Penn Parking Corp., 106 F.R.D. 419, 422 (W.D. Pa. 1984).  In Somlyo v. J. Lu-Rob Enterprises., Inc., 932 F.2d 1043 (2d Cir. 1991), the court held that it is appropriate to excuse a party's noncompliance with a local rule where "the application of the letter of Local Rules to a particular case would cause an unjust result.  If faced with potential unfairness, the district court should tailor the Local Rules to best achieve a just outcome."  Id. at 1049.  For the reasons discussed infra the instant motion to dismiss is not well taken, the Court concludes it is appropriate to excuse Carr's noncompliance with Rule 7.1(c).

### 1. Carr's Request for Compensatory Damages

As discussed above, Carr alleges that Whittenburg and Hein retaliated against him for filing a grievance by making a false disciplinary report against him, in violation of his rights under the First Amendment and Fourteenth Amendment of the United States Constitution. See, e.g., Walker v. Thompson, 288 F.3d 1005, 1009 (7th Cir. 2002); DeWalt v. Carter, 224 F.3d 607, 618 (7th Cir. 2000); Babcock v. White, 102 F.3d 267, 275 (7th Cir. 1996); Cain v. Lane, 857 F.2d 1139, 1143 (7th Cir. 1988). Whittenburg and Hein contend that Carr is precluded from recovering compensatory damages on his claim by 42 U.S.C. § 1997e, which, provides, in pertinent part, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

It is well settled in this Circuit that 42 U.S.C. § 1997e(e) is a bar only to claims for mental or emotional injuries absent a physical injury. "Section 1997e(e), as its wording makes clear, is applicable only to claims for mental and emotional injury. It has no application to a claim involving another type of injury." Robinson v. Page, 170 F.3d 747, 748 (7th Cir. 1999). See also Cassidy v. Indiana Dep't of Corr., 199 F.3d 374, 376-77 (7th Cir. 2000) (holding that, where a prisoner asserted no physical injury, "[a] plain reading of § 1997e(e) tells us that Cassidy's claims for damages for mental and emotional injuries, contained in paragraph one of his 'Report of Specific Forms of Relief Sought,' must be barred, though Cassidy may nonetheless pursue all of his other claims for damages."); Jones-Bey v. Cohn, 115 F. Supp. 2d 936, 939 (N.D. Ind. 2000) ("Section 1997e(e ) merely limits a prisoner's ability to recover damages for mental and emotional distress, though he may still seek injunctive relief or other

forms of damages for any constitutional violation he can prove.").

It is likewise well settled that "[a] deprivation of First Amendment rights standing alone is a cognizable injury." Rowe v. Shake, 196 F.3d 778, 781 (7th Cir. 1999). Further, such an injury is compensable through so-called "general damages" or "presumed damages," even in the absence of proof of injury. In City of Watseka v. Illinois Public Action Council, 796 F.2d 1547 (7th Cir. 1986), the court explained that a plaintiff in an action under 42 U.S.C. § 1983 may "not recover damages based upon the 'abstract . . . value . . . or . . . importance . . . of constitutional rights,'" but that an injury to First Amendment rights is one "that [may] be compensated through substantial money damages." 796 F.2d at 1559 (quoting Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 310, 311 n.14 (1986)) (affirming an award of $5,000 in presumed damages to a political canvassing company whose First Amendment rights were violated by a municipal ordinance limiting door-to-door soliciting). See also Hessel v. O'Hearn, 977 F.2d 299, 302 (7th Cir. 1992); Gilpin v. American Fed'n of State, County & Mun. Employees, AFL-CIO, 875 F.2d 1310, 1314 (7th Cir. 1989). In sum, 42 U.S.C. § 1997e(e) does not preclude the recovery of compensatory damages in this case.

### 2. Carr's Request for Injunctive Relief

As noted, Carr's complaint requests that the Court award him injunctive relief. See Am. Compl. § V. The Court agrees with the Defendants that the complaint's allegations in support of a request for injunctive relief are thin. However, the Court is not aware of any prescribed form for pleading for an injunction. See Galli v. Morelli, 277 F. Supp. 2d 844, 861 (S.D. Ohio 2003) (a former state university architect who brought a First Amendment retaliatory discharge action against a university administrator, stemming from his speech regarding alleged

improprieties in a renovation project, properly pleaded an injunctive remedy as an element of the claim by virtue of the ad damnum clause in his complaint requesting "such equitable and further relief as may be just and appropriate," and thus the architect would be entitled to an injunction ordering reinstatement in the event of a successful claim); Pine Township Citizens' Ass'n v. Arnold, 453 F. Supp. 594, 598 (W.D. Pa. 1978) ("[It is] hornbook law that specific allegations of irreparable injury and inadequate remedy at law are not necessary if the averments [of the complaint] as a whole show that this would be the result of the acts complained of. It is the duty of the district court judge to examine the complaint for substantive allegations which would support a claim for injunctive relief and not to look merely at the prayer for relief.") (citations omitted).

      In this instance, Carr's complaint requests that the Court "[g]rant injunctive relief ordering defendants to cease from . . . acts of retaliation and denial of fair hearings," suggesting a general policy of promoting retaliation among Menard officials. Am. Compl. § V. Also, the complaint alleges that "Defendants Whittenburg and Hein conspired between themselves and with others with respect to the retaliation against plaintiff in the form of the 4/27/01 false disciplinary report and the subsequent guilty finding at the adjustment committee hearing where plaintiff was denied the testimony of any witnesses." Id. ¶ 12. Liberally construed, these allegations could be read as suggesting an ongoing threat of harm. Naturally, the Court would evaluate any request by Carr for a permanent injunction in light of the principle that "damages are the norm," and thus, an award of a permanent injunction is "abnormal." Walgreen Co. v. Sara Creek Prop. Co., B.V., 966 F.2d 273, 275 (7th Cir. 1992). In evaluating such a request, the Court would be mindful of the principle that an injunction is an extraordinary remedy, to be used

sparingly, see Chicago Bd. of Educ. v. Substance, Inc., 354 F.3d 624, 631-32 (7th Cir. 2003) (a court has an independent duty to assure that any injunctions it issues are appropriate in scope), as well as the familiar rule that, "in the prison context, a request for injunctive relief must always be viewed with great caution because . . . judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." Goff v. Harper, 60 F.3d 518, 520 (8th Cir. 1995). See also Forrest v. Horn, No. CIV. A 97-CV-4442 1999 WL 552546, at *3 (E.D. Pa. June 29, 1999) (quoting Rizzo v. Goode, 423 U.S. 362, 379 (1976)) ("[W]here a plaintiff requests an injunction that would require the Court to interfere with the administration of a *state* prison, 'appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief.'") (emphasis in original). In short, while the Court is skeptical about the likelihood that Carr will prevail on a request for injunctive relief in this case, at this juncture the Court cannot say that it appears beyond doubt that he can prove no set of facts in support of his claim which would entitle him to relief. Therefore, dismissal of Carr's request for injunctive relief will be denied.

### 3. Carr's Official Capacity Claims

Because the Court has chosen to deny dismissal of Carr's request for injunctive relief at this juncture, the Court likewise will deny dismissal of Carr's claims against Whittenburg and Hein in their official capacities. An official capacity suit is effectively an action against the entity of which the Defendant officer is the agent and is treated as a suit against that entity. See McNeal v. Cook County Sheriff's Dep't, 282 F. Supp. 2d 865, 868 (N.D. Ill. 2003). Because damage claims against a state are barred by the Eleventh Amendment, state officials may not be sued for damages in federal court in their official capacity. See Scott v. O'Grady, 975 F.2d

366, 369 (7th Cir. 1992). Further, neither state agencies nor state officials acting in their official capacities are "persons" within the meaning of 42 U.S.C. § 1983. See <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989). However, the Eleventh Amendment shields officials only from claims for damages, not from injunctive relief. See <u>Brown v. Budz</u>, 398 F.3d 904, 918 (7th Cir. 2005); <u>Williams v. Wisconsin</u>, 336 F.3d 576, 580-81 (7th Cir. 2003).

With regard to Carr's official capacity claims, Carr must prove that the purported deprivation of his constitutional rights resulted from an official policy or custom of Menard. See <u>Monell v. Department of Soc. Servs. of City of N.Y.</u>, 436 U.S. 658, 694 (1978). Nowhere in his complaint does Carr contend that Menard maintains a policy or custom which caused the alleged deprivation. Rather, he attributes all of his problems at the prison to acts of the particular defendants. However, as discussed, a liberal construction of the allegations of Carr's complaint could be taken to suggest a prison-wide policy or custom was involved in the retaliation at issue. In the light of the allegations of Carr's complaint and, most importantly, the extremely deferential pleading standard for official capacity liability, the Court will allow Carr to go forward. See <u>Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163, 168-69 (1993) (absent amendment of Rule 8 and Rule 9 of the Federal Rules of Civil Procedure, "federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later.").

### 4. Qualified Immunity

Finally, Whittenburg and Hein contend that they are entitled to dismissal because they are shielded from suit in this instance by the doctrine of qualified immunity. "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" <u>Saucier v.</u>

Katz, 533 U.S. 194, 200 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). It "is a judicially created doctrine that stems from the conclusion that few individuals will enter public service if such service entails the risk of personal liability for one's official decisions." Donovan v. City of Milwaukee, 17 F.3d 944, 947 (7th Cir. 1994). The doctrine "gives public officials the benefit of legal doubts." Id. at 951 (quoting Elliott v. Thomas, 937 F.2d 338, 341 (7th Cir. 1991)). Qualified immunity will shield Whittenburg and Hein "from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

"The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." Hope, 536 U.S. at 736. If the plaintiff satisfies the threshold qualified immunity inquiry, "the next, sequential step is to ask whether the [constitutional] right was clearly established," an inquiry that "must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202 (citing Wilson v. Layne, 526 U.S. 603, 615 (1999)). "To show this, a plaintiff may point to closely analogous cases establishing that the conduct is unlawful, or demonstrate that the violation is so obvious that a reasonable state actor would know that what he is doing violates the Constitution." Morrell v. Mock, 270 F.3d 1090, 1100 (7th Cir. 2001). "If the law did not put the officer on notice that his conduct [was] clearly unlawful, . . . [a] judgment based on qualified immunity is appropriate." Saucier, 533 U.S. at

202.  This is because qualified immunity shields "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).

In this instance it is clearly established beyond peradventure that prison officials may not retaliate against prisoners for exercising their First Amendment right to file grievances or otherwise complain about their conditions of confinement.  See Walker, 288 F.3d at 1009; DeWalt, 224 F.3d at 618; Babcock, 102 F.3d at 275; Cain, 857 F.2d at 1143.  Therefore, the Defendants' request for dismissal of Carr's claims for retaliation in violation of his constitutional rights on the basis of the qualified immunity doctrine will be denied.  See Turley v. Catchings, No. 03 C 8491, 2004 WL 2092008, at *4 (N.D. Ill. Sept. 15, 2004); Trepanier v. Ryan, No. 00 C 2393, 2003 WL 21209832, at *5 (N.D. Ill. May 21, 2003); Martin v. Snyder, No. 00 C 983, 2002 WL 484911, at *11 (N.D. Ill. Mar. 28, 2002); Snyder v. Roth, No. 97 C 254, 1997 WL 701337, at *5 (N.D. Ill. Nov. 6, 1997).  See also Moore v. Sarrazin, No. 95 C 5185, 1997 WL 610307, at *4 (N.D. Ill. Sept. 29, 1997).

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss Plaintiff's Amended Complaint filed by the Defendants, Larry Whittenburg and Craig Hein, is **DENIED** (Doc. 84).

**DATED: April 28, 2006**

> s/ Donald G. Wilkerson
> **DONALD G. WILKERSON**
> **United States Magistrate Judge**